Claresa F. Armstrong Brown, Defendant, Cross-Complainant, Counter-Claimant, Appellant, and Cross-Appellee, v. Commercial National Bank of Peoria, a National Banking Association, as Trustee, etc., et al., Plaintiff, Cross-Defendants, Appellees, and Cross-Appellants.

Gen. No. 67–16.

Third District.

April 17, 1968.

Rehearing denied and petition for certification of import June 7, 1968.

Robert L. Burhans, of Peoria, and King, Robin, Gale & Pillinger, of Chicago, for appellant.

Kavanagh, Scully, Sudow & White, Harry B. Hoffman, and Arleigh Davis, of Peoria, for appellees.

STOUDER, J.

This case, arising from the Circuit Court of Peoria County, involves the validity of three inter vivos irrevocable trusts created by Clara K. Meyer, now deceased.

The Settlor was a major stockholder and depositor with the Commercial National Bank of Peoria, had been on the board of directors prior to the consolidation which resulted in the establishment of Appellee Bank in its present form in 1961 and had engaged in many business dealings with the bank over a long period of time. In 1946, Clara Meyer created a revocable trust naming the bank as trustee which trust was in effect at the date of the Settlor's death but is not involved in this litigation. In 1960, the Settlor created an irrevocable trust, the Appellee bank being trustee, her grandchildren being the principal beneficiaries and referred to herein as the grandchildren's trust. Two other irrevocable trusts were created in January, 1962, designating the bank as trustee, her son Richard Meyer being the principal beneficiary of one trust, herein referred to as the Richard trust and her daughter, Claresa Armstrong Brown, being the principal beneficary of the other trust, herein referred to as the Claresa trust. Securities from the 1946 revocable trust were transferred to the three irrevocable trusts. Clara Meyer, at the age of 87, died testate, February 19, 1964.

A disagreement between the bank and Claresa resulted in the commencement of this suit by the bank for approval of its accounts and investment policies. An order was entered from which no appeal has been taken and we are not concerned with such order in this appeal. Claresa Brown counterclaimed against the bank as trustee and the

beneficiaries of the three irrevocable trusts seeking to set aside such trusts. The issues created by the counterclaim were determined by the court sitting without a jury and resulted in an order dismissing the counterclaim for want of equity. This appeal follows. The trial court also fixed and allowed trustee's fees and fees for the attorneys of the trustee and the beneficiaries allocating such costs against the principal of the three trusts involved. Although no question is raised concerning the reasonableness of the fees allowed, the bank as trustee and the beneficiaries have cross appealed questioning the propriety of assessing such fees against the principal of the trusts rather than against the income of Claresa Brown.

The allegations of the counterclaim are in substance that Clara Meyer was mentally and physically enfeebled by old age and cerebral arteriosclerosis; that a fiduciary relationship existed between the bank and Clara Meyer at the time the trust agreements were executed, the bank exercising a dominant influence with respect to Clara Meyer's enfeebled condition; that Clara Meyer did not understand the trust agreements entered into; that she did not receive independent legal advice concerning such agreements and that the bank conspired with Richard Meyer to deprive Clara Meyer of independent legal advice. It should be noted that the counterclaim does not allege actual fraud or mistake.

The evidence, which is voluminous, was presented during hearings lasting nearly four weeks and relates primarily to two issues, the circumstances of the execution of the trust agreements and the mental and physical condition of Clara Meyer.

The Settlor was advised in legal matters up to and including the time of execution of the grandchildren's trust in 1960 by one John M. Elliot, an attorney. However when the Claresa and Richard trusts were executed in 1962, the only attorney involved was a Boyd Goldsworthy.

276

Mr. Goldsworthy had been Richard's attorney in other matters and the evidence is conflicting as to whether the Settlor requested to have Mr. Goldsworthy represent her or whether she indicated any desire to have other representation or exactly whom Mr. Goldsworthy did represent. It does appear that Goldsworthy conferred with Clara Meyer prior to the execution of the Richard and Claresa trusts although an officer of the bank was also present. It also appears that Goldsworthy submitted his bill for services to Clara Meyer which bill was paid. Furthermore it can be said that there is little evidence from which it can be inferred that with respect to the trust agreements, Goldsworthy represented anyone other than Clara Meyer. The evidence is also in dispute as to how thoroughly the Settlor understood the somewhat involved trust instruments.

Claresa was acquainted with the terms of the trust agreement, a copy of the Claresa trust was made available to her and her attorney and she took advantage of some of the trust benefits both prior and subsequent to the death of the Settlor.

The mental capacity of the Settlor is also in dispute. Appellant makes no claim that the Settlor was mentally incompetent prior to 1963 but, as we understand her argument, that Settlor's mental ability was progressively impaired due to cerebral arteriosclerosis over a long period of time resulting in incompetency sometime in 1963 and death in February of 1964. The evidence also shows that the Settlor was a director of the bank until the 1961 consolidation, regularly attended meetings and conducted her own business affairs as well as some for her daughter until sometime in 1962 after the execution of the Claresa and Richard trusts.

While appellant alleges that Richard conspired with the bank to accomplish the execution of the trusts, the record does not factually support such allegation nor does appellant make further argument on this point.

277

■ In order that these trusts may be set aside it must be shown either that the Settlor was incompetent at the time they were executed or that a fiduciary relationship existed between the bank, or one of the beneficiaries, and the Settlor, that the person other than the Settlor was the dominant party and by unfair tactics induced the Settlor to enter into a transaction from which the dominant party appears to gain at the expense of the dependent party. Works v. McNeil, 1 Ill2d 47, 115 NE2d 320; Turner v. Black, 19 Ill2d 296, 166 NE2d 588 and Boryca v. Parry, 24 Ill2d 320, 181 NE2d 124.

Appellant's facts concerning senility being a progressive attribute of human nature are most interesting or would be had there been considerably fewer of them. However this court is fully prepared to recognize the fact that senility accompanies life, that it is indeed progressive and, in fact begins with the onset of life and progresses until life is terminated. Unfortunately Appellants' voluminous facts, figures, documents and charts failed to establish the Settlor's incompetence prior to 1963.

■ Appellant, herself a psychiatrist, makes no claim that the Settlor was legally incompetent at the time the trusts were executed but only that the mental ability of the Settlor had become so impaired by senility that she depended upon the bank for advice in business matters and could not understand the import of the trust agreements without independent, competent legal advice. This argument itself assumes that the Settlor was capable of understanding advice and counsel albeit from someone other than the bank. Accordingly we do not believe the trusts can be deemed invalid on account of the Settlor's incompetency.

This leaves us with the following argument for appellant. The relationship between the bank and the Settlor was a fiduciary relationship. The bank was the dominant party due to the mental impairment of the

278

Settlor and that the bank induced the execution of the trust agreements for its own gain. Based on these propositions, appellant would have this court announce as a rule of law that in any case where a fiduciary relationship exists and the parties to the relationship enter into a business transaction, that transaction must be set aside unless the transaction be affirmatively shown to be fair by proof that the dependent party was represented by independent legal counsel. This we do not conceive to be the law of this state nor are we prepared to announce it as such in this case.

■ ■ It is true that where a fiduciary relationship exists and a transaction is entered into whereby the dominant party appears to gain at the expense of the dependent party, the transaction will be deemed presumptively fraudulent and will be set aside unless the one in whom trust and confidence is reposed establishes its fairness by clear and convincing proof. Clark v. Clark, 398 Ill 592, 76 NE2d 446, and Works v. McNeil, 1 Ill2d 47, 115 NE2d 320. It is also true that one method of establishing the fairness of such a transaction would be to show that the dependent party was represented by independent legal counsel. However this is not to say that having established the existence of a fiduciary relationship the burden is then upon the dominant party to establish the fairness of any or all transactions between the parties to the relationship.

■ ■ We are not disposed to quibble about the question of whether Appellee Bank, or any of its officers, by virtue of being a professional fiduciary in its capacity as trustee, thereby was a fiduciary in any other capacity since the bank has conceded the relationship. Having shown the relationship however, appellant's burden does not then shift to appellee for appellant must also affirmatively show that appellee was the dominant party and that it gained from the trust agreement at the expense of the Settlor. There is no evidence in the record from which

it can be inferred that the bank received any gain or benefit other than the compensation for its services as a professional trustee. This cannot be the kind of gain contemplated by the above rule for to so hold would mean an invitation never to pay any professional fiduciary for his services since such payment would thereby render the transaction presumptively fraudulent. Nor can it even be inferred from the evidence that the trust agreements were disadvantageous to the Settlor. At best the trust agreements minimized her potential federal estate tax and any disadvantage accrued not to the Settlor but to the appellant. Accordingly we believe appellant has failed to establish facts warranting the application of the presumptive fraud rule applicable to fiduciary relationships and hence the trusts are not invalid for this reason.

 This brings us to the cross appeal of the bank and the trust beneficiaries not including Claresa Brown, in which it is contended that the court erred in assessing other costs against the principal of the trusts. No question is raised concerning the allowability, reasonableness or allocation among the trusts involved. It is argued by the bank and beneficiaries that such fees should have been assessed against Claresa Brown or her income from the Claresa trust. The general rule is that expenses incident to the preservation of a trust or for the benefit thereof are properly chargeable against and reimbursable from the trust estate. Kerner v. Peterson, 368 Ill 59, 12 NE2d 884 and Patterson v. Northern Trust Co., 286 Ill 564, 122 NE 55. Such rule does not condition the assessment of fees and costs dependent upon the outcome of the litigation and does not require that such fees and costs be assessed against the unsuccessful party. Although costs may be assessed against the unsuccessful party where it appears the claim asserted was groundless, vexatious or for the purpose of harassment, we believe the record demonstrates that a bona fide dispute existed and consequently we find no error in the trial

280

court's assessment of fees and costs against the trust estates.

For the foregoing reasons the decrees of the Circuit Court of Peoria County are affirmed.

Decrees affirmed.

ALLOY, P. J. and SCHEINEMAN, J., concur.