FIRST MIDWEST BANK/JOLIET, Successor in interest to Union National Bank And Trust Company of Joliet, Plaintiff and Counterdefendant-Appellant and Cross-Appellee, v. JOHN RILEY DEMPSEY, d/b/a Joden Industries, a/k/a Joden Industries, Inc., *et al.*, Defendants (Sally Dempsey a/k/a Sarah Ann Dempsey, Defendant and Counterplaintiff-Appellee and Cross-Appellant).

Third District   No. 3—86—0536

Opinion filed June 22, 1987.

308

Shutts & Shutts, of Joliet, and Winston & Strawn, of Chicago (Stanley A. Walton and Robert Shutts, of counsel), for appellant.

Harry E. Van Camp, of Madison, Wisconsin, for appellee.

JUSTICE WOMBACHER delivered the opinion of the court:

This cause was initiated by First Midwest Bank/Joliet (bank), previously known as Union National Bank, to foreclose on real estate given as collateral to secure a loan made by the bank on a real estate development project. Sarah Ann Dempsey, a/k/a Sally Dempsey (Sally), was named as a defendant by the bank in the foreclosure action.

The foreclosure was summarily granted prior to trial. The only issues which proceeded to trial and which are the subject of this appeal involve the counterclaim of Sally against the bank. The counterclaim alleged that the bank breached certain fiduciary duties owed Sally. The case was tried in Will County and culminated in a judgment in

favor of counterplaintiff Sally in the amount of $278,500. The bank appeals the trial court's decision. Sally asserts a cross-appeal. We reverse the trial court's order finding the bank liable and affirm the issues brought to appeal by Sally Dempsey. A summary of the facts is necessary to understand the issues litigated and findings made by the trial court.

Sally Dempsey was one of the beneficiaries of a testamentary trust (trust) established by the will of her grandfather, John Hopkins Riley. The bank was at all material times the trustee of that trust. The bank was to distribute approximately one-half of the trust proceeds on her twenty-fifth birthday, July 6, 1978, and distribute the remaining assets on Sally's thirtieth birthday, when the trust was to terminate.

Subsequent to Sally's twenty-fifth birthday the bank distributed one-half of the principal and accumulated income ($225,000) of the trust to an agency account established on October 5, 1978, at the bank pursuant to the agreements and documents executed by Sally and the bank. The bank continued to act as a trustee on the remaining undistributed assets in the trust.

Prior to the distribution of the trust income into the agency account, Sally Dempsey agreed in the summer of 1978 to invest $100,000 in a family real estate venture called "Joden." Joden was to purchase property in Lemont, Illinois, and sell or develop it. The real estate was owned by the mother-in-law of Sally's brother, John R. Dempsey (John).

Sally Dempsey, her brother, and her father, Dr. Raymond Dempsey (Dr. Dempsey), had previously discussed the acquisition of the property. In September of 1978 a real estate contract had been signed by John and the seller of the real estate (John's mother-in-law, Mrs. Mocny) for one million dollars. The bank made a loan dated December 14, 1978, of $650,000, secured by the real estate, and the remaining $350,000 to purchase the land was equity contributed by John and perhaps others.

On October 5, 1978, the date on which Sally's trust proceeds were transferred from the trust to her, an agency agreement was entered between Sally and the bank concerning the funds. The key clauses in the agreement state:

"Owner authorizes Dr. Raymond Dempsey and John Dempsey; jointly to direct Agent in Investment activity including but not limited to the purchase and sale of securities ***." (Part A-9)

"(T)he bank shall suggest to the owner from time to time such *** investments *** as the bank shall deem worthy of consider-

ation *** (I)n any event, the responsibility for action to be taken by the Bank shall remain with the Owner." (Part B)

Part A-9 of the agreement was added subsequent to October 5, 1978. However, Sally Dempsey testified at trial that the provision was discussed at the October meeting, and she knew such a provision was to be added to the agreement.

On that same date two checks were given to Sally totaling $25,000 and drawn from the agency account. She endorsed the checks and gave them to her brother, John, for the Joden investment. Subsequently, in 1979, John and Dr. Dempsey under authority of the agency agreement directed the bank to put an additional $125,000 into Joden from Sally's agency account. Sally testified she did not read the bank transaction reports regularly, and therefore didn't learn of the additional $125,000 investment into Joden until four months subsequent to the transfer of the funds. In late 1979, when Sally discovered that $150,000 was put into Joden instead of the $100,000 she had authorized, she terminated the broad authority John and Dr. Dempsey had under the agency agreement.

In 1981 Sally Dempsey sued her brother for fraud and mismanagement, and John's wife and mother-in-law for mismanagement. However, she did not sue the bank. Sally recovered a final judgment in Cook County in 1984 against her brother John for $195,000, including punitive damages. She apparently never collected the damages. The Joden venture eventually filed for bankruptcy, but information regarding the same is not of record in this proceeding.

The bank filed a foreclosure suit and named Sally as defendant for possibly having an interest in the subsequent real estate. In fact and in law, it turned out she had no beneficial or other interest in the real estate.

In the interim the bank continued to manage the remaining one-half of the original trust. Upon Sally's thirtieth birthday, the bank refused to distribute the remaining one-half of the trust because the beneficiary, Sally, refused to sign a release and receipt form in order to conclude the bank's accounting.

In October 1983, Sally filed a counterclaim in the Joden foreclosure action in which she was a nominal defendant, alleging that the bank mismanaged the testamentary trust, wrongfully refused to distribute the trust assets, and failed to adequately consider the tax implications of its actions. We shall for clarity refer to these allegations as the "trust counterclaims."

Other counterclaims additionally asserted that the bank had a conflict of interest in that it was a fiduciary and investment advisor of

Sally Dempsey, and at the same time a secured party having an adverse interest in an asset of Sally Dempsey, *i.e.*, the Joden real estate. This alleged conflict of interest prevented the bank from being a faithful and honest fiduciary and advisor to Sally Dempsey with regard to her investments and assets. The counterclaims also asserted various breaches of the bank's duty to exercise due care and loyalty with regard to the funds in the agency account. These claims we shall refer to as the "conflict of interest counterclaims."

Sally sought $532,821 in compensatory damages and $790,000 in punitive damages on these counterclaims.

The trial court denied the counts of Sally's counterclaims which dealt with trust mismanagement and punitive damages, but granted judgment based upon ordinary negligence on the remaining claims. The court held that after the establishment of the agency account, the bank owed certain duties to Sally, which were breached. The court found that Mr. Mahon, a bank officer, had attended law school with Sally's brother John and concluded that this relationship led the bank to breach its fiduciary duty to Sally. Further, the court made a finding that Sally was aware of the provision to be inserted in the agency agreement authorizing John and Dr. Dempsey to direct the investment of the funds; however, the court refused to give it effect because it was added after Sally signed the agreement. Additionally, the court found the inserted provision was ambiguous and construed it against the bank, which had drafted it.

Additionally, the court found that Sally and her brother John had indeed agreed that she would invest $100,000 into Joden, and that agreement predated the creation of the agency account, but that this investment plan was never communicated to bank officials. The $25,000 that Sally received on October 5, 1978, and turned over to John was determined to be outside of the agency agreement and not part of the liability of the bank.

The court made a specific holding that the bank failed to exercise due care in obtaining documents of ownership of Joden; failed to warn Sally against the Joden investment; failed to advise or consent; breached a duty not to retain a security interest in the real estate given as collateral on the loan to Joden.

Although trust mismanagement had not been found on the trust counterclaims, the court nonetheless refused the bank's request for attorney fees and costs in its successful effort to defend the trust. On June 26, 1986, the trial court entered an award for Sarah Dempsey in the amount of $280,661.67. This appeal followed.

The bank seeks a reversal on each and every ruling, finding and

judgment concerning liability attributed to it. Basically the bank contends the trial court's findings of fact, conclusions of law, and the inferences drawn therefrom are erroneous and stem from a misconception of the bank's fiduciary duties and obligations in its two separate and distinct capacities, *i.e.*, as trustee under the last will and testament of John H. Riley and those arising as agent, and not trustee, under the agency agreement of October 5, 1978. Upon appeal, the bank requests a review of the evidence presented at the trial and seeks an inquiry into the factual findings of the court.

The trial court ruled that the bank was negligent in a number of particulars. However, all of those findings were based upon the court's belief that the bank should have had a major role in the Joden investment decision because it was a "fiduciary," and, failing to keep Sally out of Joden was a breach of that duty. The court determined that the first $25,000 was not part of the agency account agreement and excluded it from the computation of damages. The $125,000 later transferred from the agency account to Joden was found to be contrary to the duties owed to Sally and served as the basis for the damages awarded to her. Yet, we find no substantive basis to distinguish the first Joden monies transferred immediately after the agency agreement was signed and the last monies disbursed several months later. Sally's pleadings admit that she authorized $100,000 of her agency account funds to be invested into Joden. The remaining $50,000 was invested at the direction of her brother and father, to whom she gave such authority via the insert Part A-9. The fact that the agreement to invest $100,000 into Joden was not communicated to the bank is irrelevant. A principal is bound by any authority given to his agent "irrespective of the third person's knowledge of the existence of the authority." 3 C.J.S. *Agency* sec. 391 (1973).

The provision Part A-9 is not ambiguous, as the trial judge concluded. The insert is not susceptible of any other meaning than the bank takes its orders from John and Dr. Dempsey. It explicitly states that the two shall "direct" the bank. The record indicates that Sally read the clause, which was explained to her on October 5, 1978, but added to the agency agreement at a later date, and never complained of it. We conclude that Sally is estopped from contending the provision is not effective since it was added after she read and signed the agreement. Her acts prevent her from now claiming a right to the detriment of the bank, which was entitled to rely on her conduct and acted accordingly. An inconsistent position may not now be adopted to the loss and injury of the bank.

■■■ The trial court held that regardless of the contract, the

bank had an overriding duty to investigate or warn her that Joden was risky. This proposition is without merit because the remaining contractual duties do not include a duty to affirmatively investigate Joden, or to inform Sally about its financial prospects, absent the beneficiary's request for advice on an investment not suggested by the bank. The bank's duties, even if a fiduciary, are no greater than as set forth within the four corners of the 1978 agency agreement upon which she bases her counterclaims. The scope of authority and duties of one acting in the capacity of an agent are clear:

> "An agent, whose authority is limited by instructions, has a duty to adhere faithfully thereto, regardless of his own opinion as to the priority or expediency thereof; and if he exceeds, violates, or fails to act upon such instructions he will be liable to the principal for any loss or damage resulting therefrom as a natural and ordinary consequence, regardless of the degree of care exercised, and regardless of whether fraud is involved or not." (3 C.J.S. *Agency* sec. 288 (1973).)

There can be no recovery for the breach of a nonexistent duty. (*Kay v. Ludwick* (1967), 87 Ill. App. 2d 114, 230 N.E.2d 494.) Illinois courts have refused to add any additional duties to those set forth in any contract between a bank and its customer even if the bank is a "fiduciary." The only duty is to carry out the contract. See *Bieze v. Coca* (1977), 54 Ill. App. 3d 7, 369 N.E.2d 106.

The trial court also found that the bank had a conflict of interest in that it was a fiduciary and investment advisor of Sally Dempsey, and at the same time a secured party taking an adverse interest in an asset of Sally's. The conflict of interest prevented the bank from being a faithful and honest fiduciary and advisor to Sally with regard to her investments and assets. Yet, this holding was contrary to the findings the court made in the foreclosure judgment which determined that John and the bank were the only parties with an interest in the Joden land trust.

■ Furthermore, Sally failed to establish that the bank had an adverse interest in the subject matter of the agency (Joden) and thereby failed to sustain her burden of proof. The record reflects the fact that the bank loaned the funds for the purchase of the real estate on December 14, 1978. It was not until months later in 1979 that the additional $125,000 was transferred from the agency account, at the direction of John and Dr. Dempsey. We therefore find that the evidence fails to sustain a finding that the money was utilized to purchase the real estate. As indicated earlier, the real estate had been fully paid for prior to the transfer of any funds from the agency ac-

count to Sally or Joden. Additionally, John advised the bank that Sally would have an interest in the business entity, but not in the land. We must conclude that the bank had a beneficial interest by assignment in the real estate in the land trust, and Sally Dempsey's investment was in Joden or Joden Industries.

We further note that the trial court failed to make a finding as to what type of business entity Joden was. The testimony of bank officers was that some thought it was a corporation, and some a partnership. In a sworn affidavit Sally Dempsey stated that Joden was to be a partnership and she was to have a one-third interest along with her brother, John, and his mother-in-law, Mrs. Mocny. The title of this case describes Joden as Joden Industries (a/k/a Joden Industries, Inc.). In spite of the trial court's inability to ascertain the business organization of Joden, it held the bank liable for failing to exercise due care in not obtaining any indicia of ownership to support the investment in the agency account. On oral argument the attorneys for the parties were unable to give a definitive answer to the nature of the entity, Joden. Since neither the bank, nor the trial court, nor counsel demonstrated any real interest in the question, this court will not second-guess the others. As Joden was merely a family venture, the receipt attained by the bank serves as a sufficient indication of Sally Dempsey's interest in the entity, whatever it was.

The trial court's holdings strongly imply that there was a conspiracy between Mr. Mahon, an officer of the bank, and John R. Dempsey. Yet the evidence in the record is insufficient to support this finding. The only matter in the record regarding their relationship is the fact that the two had gone to law school together. There is no evidence to support the finding that the two men were close friends or that Mr. Mahon would sacrifice his bank's integrity to help his former classmate.

After a thorough review of the record we find that there are insufficient facts to support the trial court's findings and conclusions of law. The trial court misperceived the relationship the bank had with regard to the Joden venture. The record establishes the fact that the Joden venture was agreed to by the Dempsey family before the bank's disbursement of trust funds into Sally Dempsey's agency account, and the subsequent transfer of monies from the account by order of John and Dr. Dempsey to Joden. The agency account and its agreement were part of the administrative implementation for the venture. Other than the secured real estate loan, the bank had nothing to do with Joden. This court simply cannot sustain the trial court's judgment based on the record before us.

Sally Dempsey's cross-appeal seeks a reversal of the court's findings and judgment excluding the $25,000 paid by Sally to John for Joden on October 5, 1978, from consideration in calculating the damages awarded by the court. She also seeks reversal of the court's denial of punitive damages, the court's finding that there was no mismanagement of the testamentary trust, and the bank's right to delay the distribution. For the reasons stated above we need not address the issue of the court's exclusion of the $25,000 from the damage award, and we affirm the denial of any punitive damages.

■ As to Sally Dempsey's cross-appeal, Sally asserted in the court below that the bank breached its duties as a trustee when it mismanaged the assets it held in trust for her by failing to consider the tax implications of its actions and by failing to maintain sufficient diversity in her investment portfolio. The standard by which courts must judge a trustee's investments has been codified in section 5 of the Trusts and Trustees Act (Ill. Rev. Stat. 1985, ch. 17, par. 1675). A trustee's actions, upon review, are presumed to have been made in good faith. A party objecting to a trustee's acts has the burden of going forward with evidence to substantiate the objection. *Elmhurst National Bank v. Glos* (1968), 99 Ill. App. 2d 74, 241 N.E.2d 121.

■ Sally Dempsey never proved her claims regarding trust mismanagement. The trial court found no damages were incurred. The stocks in the trust were originally secured in kind from the grandfather's estate. Sally suffered no loss of principal or income due to the bank's management. A trustee will not be surcharged for matters as to which there is no fault or liability on its part, or no loss or damage suffered by the estate or the beneficiaries. 90 C.J.S. *Trusts* section 393 (1955).

■ ■ Further, the trust terminated as to Sally Dempsey's interest on July 6, 1983, and she was thereafter entitled to distribution of the corpus. In due course, the bank sought distribution, presenting its accounts and asking that the beneficiary sign a receipt and release. Sally refused. The trustee's action in withholding distribution to the beneficiary after the trust had terminated was proper. One of the privileges of a trustee to help compensate for its burdens of the office (and while it still has funds available to it) is a right to a determination of the propriety of its accounts before making a final distribution. Under Illinois law, a trust continues beyond termination until it is finally wound up. The period for winding up depends upon the circumstances. *Breen v. Breen* (1952), 411 Ill. 206, 103 N.E.2d 625. G. Bogert, Trust and Trustees sec. 1010 (rev. 2d ed. 1983).

We conclude that the trial court was correct in the finding that

the trust made an excellent profit and there were no damages demonstrated. The failure to distribute was not willful and was within the bank's right.

Lastly, the challenge by Sally Dempsey to the management by the bank of the trust of which she was the beneficiary caused the bank to incur legal fees and disbursements to defeat the claim. The trial court denied the bank's motion to grant the fees, or, in the alternative, hold back funds from the trust corpus at distribution. The bank has been released from wrongdoing and the trust assets and any income have now been distributed.

The general rule is that a trustee found to be without fault is entitled to reimbursement from the trust for all expenses properly incurred in administering and defending the trust. (*Webbe v. First National Bank & Trust Co.* (1985), 139 Ill. App. 3d 806, 487 N.E.2d 711. *Brown v. Commercial National Bank* (1968), 94 Ill. App. 2d 273, 237 N.E.2d 567, *aff'd.* (1969), 42 Ill. 2d 365, 247 N.E.2d 894.) We remand this matter back to the trial court for review and determination of reasonable fees and costs incurred, and for an appropriate award to the bank.

For all the foregoing reasons we affirm the Will County circuit court ruling with respect to the trust mismanagement issues brought by the cross-appeal, *i.e.*, the so-called trust counterclaims. We reverse the trial court on the findings of liability attributed to the bank on the conflict of interest counterclaims. We reverse and remand to the trial court the claim of attorney fees and expenses for an inquiry and determination of reasonable fees owed to the bank for the defense of Sally Dempsey's claim against the assets of the John H. Riley testamentary trust.

Affirmed in part, reversed in part, and remanded with instructions.

HEIPLE and SCOTT, JJ., concur.