KAREN SYDNEY RUBINSON, Plaintiff-Appellee and Cross-Appellant, v. ADOLPH A. RUBINSON *et al.*, as Co-Trustees of the Fannie Rubinson Memorial Trusts (Trust A), a/k/a The Karen Sydney Rubinson Trust, Defendants-Appellants and Cross-Appellees.

First District (2nd Division)   Nos. 1—91—1378, 1—91—2509 cons.

Opinion filed July 27, 1993.

Beermann, Swerdlove, Woloshin, Barezky, Becker, Genin & London, of Chicago (Howard A. London, of counsel), for appellants.

Holleb & Coff, of Chicago (Jeffrey H. Hornstein, of counsel), and Elliot L. Evans, of New York, New York, for appellee.

JUSTICE SCARIANO delivered the opinion of the court:
This appeal arises from the trial court's grant of summary judgment in favor of plaintiff after it determined that defendants, as co-trustees of a trust, breached their duty to plaintiff, a beneficiary of that trust. It premised its decision on an amendment to the trust,

effected by defendants, which divested plaintiff of her beneficial interest therein. Defendants appeal from that judgment and from the court's denial of their cross-motion for summary judgment. Plaintiff also cross-appeals from the court's denial of her motion to surcharge defendants for $40,000 in attorney fees paid out of trust assets to cover costs incurred in the defense of this action, the court having held that it had discretion to allow such payments from trust assets and that the amount incurred was not unreasonable.

On January 24, 1990, plaintiff Karen Sydney Rubinson filed an action in equity against defendants Adolph Rubinson and William Rubinson in their capacities as trustees of the Fannie Rubinson Trust (trust), created in 1954 by defendant Adolph Rubinson, who was its settlor as well as the drafter of the instrument. Under its terms as originally drafted, plaintiff was a beneficiary along with her brother, Kenneth Rubinson. The trust also named additional limited beneficiaries, namely defendant William Rubinson, his wife, and any educational or charitable institution chosen by the trustees. Defendants were successor co-trustees, duly appointed under the terms of the trust by Morris and Walter Rubinson, who served as the original trustees. The trust was initially funded with a $1,000 face-amount debenture paying 4.80% per annum due in 1987.[1]

A recital in the trust stated:

> "In compliance with the request of FANNIE RUBINSON to use the property *** to express her love for her grandchildren and children in any manner considered suitable by [the trustees] ***."

In paragraph 4 of the declaration of trust, the trustees were directed to accumulate income for the six years immediately following its formation, after which the trustees had complete and unfettered discretion with regard to the payment of monies out of the trust. They could pay any amount or any part of the principal or income of the trust to the beneficiaries, or if they chose, they could make no disbursements at all. The trust included a provision which suggested some factors the trustees could look to when deciding if and how much to pay to the beneficiaries; however, since these factors were merely precatory, they neither diminished nor augmented the trustees' discretionary authority over payments to be made to the beneficiaries.

---

[1]The current value of the *res* of the trust appears to be approximately $350,000.

Paragraph 6 of the declaration authorized the trustees to make any amendment or include any provision which could have been incorporated in the original declaration of trust, and the exercise of this power was restricted only by the following limitations:

"(1) No amendment shall be made or shall be valid which shall permit the Trust to continue beyond the lives of the survivors of Karen and Kenneth Rubinson plus a period of 20 years.

(2) No amendment shall be made or shall be valid which shall provide that the beneficiaries of the Trust as amended shall be Morris Rubinson, Walter Rubinson, Adolph Allen Rubinson or his wife Helen Pollack Rubinson, nor that any TRUSTEE shall be a beneficiary of the Trust.

(3) No amendment shall be made or shall be valid if at the time it is made it increases the taxes to be paid by the TRUSTEES of [sic] by the beneficiaries as compared with the taxes to be paid under the terms of the Trust as of the date immediately preceding the effective date of the amendment. The opinion of an attorney selected by the TRUSTEES to advise upon such question shall be conclusive as to the validity of the proposed amendment even though an amendment adopted by the TRUSTEES with such advice shall subsequently be questioned in a final decision by an administrative agency or a court of competent jurisdiction shall subsequently hold contrary to such opinion.

(4) No amendment shall be made or shall be valid which shall impose upon persons other than the TRUSTEES or beneficiaries, taxes based upon the income of Trust Fund or upon transfer of Trust Fund to the beneficiaries. In the event such taxes are assessed against, or claimed by the taxing authorities from, persons other than the TRUSTEES or beneficiaries and paid by such other persons, the TRUSTEES shall make such other persons whole."

Prior to the amendment at issue in the instant action, the original trustees had twice exercised their amendatory power. The first such amendment, in October 1955, divided the corpus of the trust into equal parts for as many grandchildren as would become beneficiaries in the future. The second, made in July 1962, included the children of William Rubinson as additional limited beneficiaries.

At some point after the trust was created in 1954, a breach occurred in the personal relationship of defendant trustee Adolph Rubinson and his daughter, plaintiff Karen Sydney Rubinson, and al-

210

though the record before us is not clear as to what happened, the event or events appear to have been sufficiently severe to cause Adolph to cease speaking with and apparently disown plaintiff sometime in or around 1964. It also appears that plaintiff stopped receiving disbursements from the trust at about that time as well.

In a November 1988 letter to defendant William Rubinson, plaintiff's uncle, she expressed a renewed interest in the trust. She informed him that she had recently discovered documents concerning the trust and asked her uncle to update her on its status and to send her a copy of the instrument. When William did not comply with this request or with similar ones made later, plaintiff retained an attorney who, on July 18, 1989, formally demanded by letter that Adolph provide all pertinent trust documents and an accounting. Adolph at first denied that plaintiff was entitled to any of the information sought, but after further correspondence, he relented and provided the requested information. Among the documents provided to plaintiff, Adolph included a document entitled "Fannie Rubinson Memorial Trust, Trust A, Declaration of Trust, May 21, 1985" and another entitled "Memorandum of Formal Action of Trustees—May 21, 1985."

The effect of these two documents was to divest plaintiff of her beneficial interest in the trust of 1954, and to turn that trust into a charitable one, endowing scholarships at various schools of the University of Chicago. In the memorandum, defendants invoked the amendatory power of the original trust in order to validate their action and stated that in keeping with what they described as the original purpose of the 1954 trust, they would endow research into the cause of and remedies for the weakening of family values, finding this to be the nearest approximation of what Fannie Rubinson would want.

Although these two instruments were dated May 21, 1985, plaintiff alleged that they were not actually prepared until after she made inquiries as to the trust. In his affidavit in support of defendants' motion for summary judgment, Adolph admitted that the documents were not prepared or executed until late 1989 (consistent with plaintiff's allegation). He further stated that he and his brother had agreed in 1985 to the substance of the transaction, but that it was not memorialized until 1989.

Plaintiff's verified complaint in equity requested the court to set aside defendants' purported transfer of assets from the 1954 trust to the one created by the declaration of trust dated May 21, 1985; to remove defendants from their position as trustees and appoint a

successor trustee; and to order an accounting. In defendants' motion for summary judgment, they asserted that under the trust agreement, they had the authority to amend the trust as they did as a matter of law. Plaintiff cross-moved for summary judgment. The court accepted memoranda in support of the motions and heard argument on December 28, 1990.

The court found first that William could serve as a trustee even though he was also a beneficiary. Next, the court determined that under the 1954 trust, the trustees did not have the power to replace that with a new one naming different beneficiaries and for a new purpose. It accordingly held that the attempt to do so by defendants constituted an abuse of discretion and a breach of trust, necessitating their removal as trustees. The court issued its order on January 4, 1991, which, along with granting plaintiff's motion for summary judgment and denying defendants', restored the trust to its original status; ordered William and Adolph to retransfer all the assets of the trust to it; appointed the Northern Trust Company as successor trustee; and enjoined William and Adolph from transferring any assets or acting pursuant to the trust declaration dated May 16, 1985. It also ordered William and Adolph to provide a full accounting to plaintiff. Lastly, the court allowed defendants to petition for recompense from trust assets the attorney fees expended in defense of this action.

On January 28, 1991, defendants' attorney submitted a petition for fees wherein he sought nearly $11,000 allegedly incurred in the action. On January 30, 1991, defendants filed a motion asking the court to reconsider and vacate its order granting plaintiff's motion for summary judgment which the court denied on March 19, 1991. By that same order the court granted defendants' petition of January 28 to pay their attorney fees with trust assets.

Subsequently on May 21, 1991, plaintiff filed a petition for a rule to show cause why the court should not hold defendants in contempt for failing to comply with its order to provide plaintiff with a full accounting. The petition explained that on May 6, 1991, the day the court had ordered the accounting due, Adolph had served plaintiff with an affidavit stating that an accounting would be too costly. He further claimed that a full accounting was not necessary because nothing had been paid from the trust except for taxes and incidental expenses. He averred that given the simplicity of the transactions of the trust over time, the funds could easily be traced using only its brokerage account statements, and in support of this belief, he attached the three most recent statements.

The circuit court held a hearing on plaintiff's show cause petition where it was established that defendants had paid out of the corpus of the trust, not only the $11,000 in fees which the court had approved, but also additional fees for the defense of this action, totalling in all $39,961.33. Upon learning this, plaintiff filed a motion asking the court to vacate its order of March 19, 1991, allowing the $11,000 in fees, and she also filed a petition seeking to surcharge defendants $39,961.33 for all attorney fees paid in defense of this action.

The court denied both plaintiff's motion to vacate its earlier order which authorized defendants to pay out of the trust's assets $11,000 owed to their attorney, and her petition to surcharge defendants for the additional monies paid out of the trust. It held that although defendants' actions breached their fiduciary duties, the court was vested with the discretion to grant attorney fees and that all the fees paid, both those authorized and those not yet authorized, were reasonable. Plaintiff timely filed a notice of appeal from that order and her appeal was then consolidated with that of defendants.

I

The first issue we address is whether the trial court correctly determined that, because defendants' acts went beyond their authority as trustees, plaintiff was entitled to summary judgment as a matter of law. With regard to this procedural device, our supreme court has recognized that the purpose of summary judgment is to permit the trial court to determine whether, after analyzing the pleadings, depositions and admissions in the record and any affidavits which may have accompanied the motion, any genuine issue of material fact exists. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871.) When deciding the motion, the trial court must construe all the evidence before it strictly against the movant. (*Reed v. Bascon* (1988), 124 Ill. 2d 386, 393, 530 N.E.2d 417, 420; *Purtill*, 111 Ill. 2d at 240, 489 N.E.2d at 871.) Our supreme court has warned that while summary judgments are to be encouraged in the interests of the prompt disposal of lawsuits, they are a drastic measure. (*Bascon*, 124 Ill. 2d at 393, 530 N.E.2d at 420; *Purtill*, 111 Ill. 2d at 240, 489 N.E.2d at 871.) Consequently, trial courts should grant summary judgments only where the movant's right to judgment is so clear as to be free from doubt. *Bascon*, 124 Ill. 2d at 393, 530 N.E.2d at 420; *Purtill*, 111 Ill. 2d at 240, 489 N.E.2d at 871.

Moreover, this court reviews the grant of summary judgment *de novo*. (*Myers v. Health Specialists, S.C.* (1992), 225 Ill. App. 3d 68, 72, 587 N.E.2d 494, 497, *appeal denied* (1992), 145 Ill. 2d 635, 596 N.E.2d 630.) This standard is of particular significance "where the evidence consists mainly of documents" (*Polo National Bank v. Lester* (1989), 183 Ill. App. 3d 411, 414, 539 N.E.2d 783, 785), as is the situation here.

Since it formed the basis of the circuit court's grant of summary judgment in plaintiff's favor, we first consider whether the court properly decided that the paramount purpose of the trust was to benefit plaintiff and her brother, and in order to make that determination, we must look, at least initially, to the four corners of the instrument which created it. (*Stuart v. Continental Illinois National Bank & Trust Co.* (1977), 68 Ill. 2d 502, 369 N.E.2d 1262; *Harris Trust & Savings Bank v. Taylor* (1977), 49 Ill. App. 3d 349, 364 N.E.2d 349.) Although the instrument before us does not expressly spell out its purpose, when it is viewed as a whole, we cannot agree with the circuit court that its main purpose was to benefit the children and grandchildren of Fannie May Rubinson. We recognize that the trust contains language which, when considered in isolation, supports an inference that the purpose of the trust is the one proposed by plaintiff. For instance, plaintiff, in suggesting a possible purpose of the trust, emphasizes the recital that forms its introductory paragraph and which states in pertinent part: "In compliance with the request of FANNIE RUBINSON to use the [corpus of the Trust] to express her love for her grandchildren and children *** ."

When construing a trust, however, we cannot fix upon each of its provisions in isolation, but must instead consider the document as a whole in order to arrive at the true intent of the settlor. (*In re Support of Halas* (1984), 104 Ill. 2d 83, 92, 470 N.E.2d 960, 964.) Accordingly, when viewing the recital of the trust in the context of its other provisions, we do not read it to be an expression of the central purpose of the trust as plaintiff proposes. While the recital does explain that the trust's assets were intended to benefit Fannie's children and grandchildren, that purported manifestation of the intent of the trust is immediately modified by the clause "in any manner considered suitable by Morris Rubinson *** and Walter Rubinson *** [(who were named as the original trustees)]." This language does not convey to us an unrestrained desire on the settlor's part to benefit Fannie's progeny as the circuit court found,

but rather a desire to bestow a benefit upon them if that gift were to be in accord with the best judgment of the trustees.[2]

It follows from such an understanding of the recital that the trust also contemplated and allowed for the possibility that the trustees would find that a gift from the trust could be inappropriate and would remain that way in perpetuity. And since, under this instrument, disbursements were not mandatory, for all intents and purposes the beneficiaries of the trust could be divested of their interest by implication. See *In re Woodward's Trust* (1954), 284 A.D. 459, 132 N.Y.S.2d 266 (holding that an instrument which left to the settlor's discretion the proportion of a trust fund to be disbursed implicitly empowered the settlor to reduce that proportion to a nominal amount or to exclude a beneficiary entirely); see also *In re Steiner's Estate* (N.Y. App. Div. 1909), 118 N.Y.S. 833, 835 (explaining that where a trust endows the trustee with the power to use its assets for the benefit of himself and his sisters "in such proportions and at such times and in such manner as he \*\*\* shall deem proper, right and advisable," disbursements of trust assets were fully within the trustee's discretion, and accordingly "[h]e may give such amount to his sisters as he may choose to, or nothing[ ]").

■ We find that in all the instances where the document at issue in this case demonstrates the semblance of a desire to benefit Fannie's children and grandchildren, the ability of the trustees to do so is subject only to their sole discretion. Paragraph 4(b), which authorizes the trustees to disburse funds to the beneficiaries, does so with the proviso that the trustees pay out any amount to the beneficiaries that the trustees consider proper, and if they so choose, they are authorized by that clause to accumulate funds until such time that they determine that the beneficiaries are deserving of the income. Thus, any perceptible desire to benefit is not unchecked, but in all cases is clearly subject to the discretion of the trustees. This is especially evi-

---

[2]Moreover, we note that our supreme court has long recognized that a recital or preamble is presumed to have no substantive effect on the instrument, but is merely intended by the drafter to be introductory or precatory. (*Brookens v. Peabody Coal Co.* (1957), 11 Ill. 2d 322, 325, 143 N.E.2d 25, 27 ("Generally, the recognized rule is that the obligations \*\*\* of the parties in the operative portion of [an instrument] prevail over a preliminary recital or preamble"); see also *Illinois Housing Development Authority v. M-Z Construction Corp.* (1982), 110 Ill. App. 3d 129, 441 N.E.2d 1179 (holding that the preliminary recitals of an instrument impose no binding obligations on the parties unless its operative portion manifested an intent to make it so).) Accordingly, even if we accepted plaintiff's construction of the recital here, we would not be able to give it the substantive effect she desires.

dent in the fact that under the express terms of paragraph 4(b), the trustees need never pay any amount to any beneficiary if they so choose.

We are constrained to hold, therefore, that given the extent of the discretion vested in the trustees, the court erred in determining, as a matter of law, that the overarching purpose of the trust was to benefit plaintiff and her brother. It necessarily follows, given the court's reliance on its erroneous decision, that it also erred in deciding that the trustees abused their discretion and breached their fiduciary obligation. Consequently, the court's grant of plaintiff's motion for summary judgment must be reversed.

## II

Plaintiff offers another ground by which we may affirm the trial court's judgment. She claims that under the trust, defendant William was ineligible to serve as a trustee. Accordingly, because the trust dictated that for any trust-related action to be valid, it must have the consent of two trustees, the amendment which stripped her of her beneficial interest, effected by only one qualified trustee, was void *ab initio*. In support of her assertion, she points to paragraph 6b(2) of the 1954 trust. It states: "No amendment shall be made or be valid which shall provide that the beneficiaries of the Trust as amended shall be [the original trustees appointed in 1954, defendant Adolph Rubinson and his wife], nor that any trustee shall be a beneficiary of the trust." Plaintiff maintains that this clause coupled with William's status as a beneficiary barred him from acting as a trustee unless he disclaimed his beneficial interest in the trust. Under section 1 of an "Act to provide for disclaimer of succession to real and personal property under nontestamentary instruments," as it existed in 1973 when William became a trustee (Ill. Rev. Stat. 1973, ch. 30, par. 211), the holder of an interest in a nontestamentary trust could disclaim that interest only by filing with or delivering to the trustee of the trust (Ill. Rev. Stat. 1973, ch. 30, par. 212) a signed and acknowledged written disclaimer which described the property or interest disclaimed. William concedes that he filed no such disclaimer. Plaintiff asserts, therefore, that his appointment as a successor trustee of the trust was invalid.

■ Accordingly, plaintiff contends, since the trust instrument at bar commands that no amendment is valid unless and until it is approved by at least two trustees acting jointly, Adolph, without the agreement and acquiescence of a co-trustee, could not amend the trust. She again relies on the language of the trust to support this

contention. In paragraph 5(a), the trust states that "the TRUSTEES shall act jointly." Furthermore, in the declaration of successor trustees, the original trustees, along with naming Adolph and William as their successors, set forth that "[u]ntil otherwise provided, there shall continue to be two TRUSTEES of the TRUST." Plaintiff thus concludes that the amendment dated May 21, 1985, which extinguished her beneficial interest was void *ab initio* because William was disqualified from acting as a trustee, and Adolph, as the only qualified trustee at the time of the amendment, could not act alone.

We disagree. Even assuming *arguendo* that plaintiff's proposed construction of the instrument is correct and that, according to its terms, William could not serve as a trustee while retaining his interest as a beneficiary, we would nonetheless have to rule that Adolph, acting as sole trustee, had the authority to enact the amendment which divested plaintiff of her interest. We find the situation presented by plaintiff's scenario to be indistinguishable from that which would exist if Morris and Walter had never named William or any other successor trustee other than Adolph or if William had died prior to the naming of his successor. In such a case, Illinois law has long held:

> " '[I]f two or more persons are named as trustees and one or more of them fails to become trustee or dies, resigns, is removed or otherwise ceases to be trustee, the powers conferred upon the trustees can properly be exercised by the remaining trustee or trustees, unless it is otherwise provided by the terms of the trust.' " (*Home For Destitute Crippled Children v. Boomer* (1941), 308 Ill. App. 170, 196, 31 N.E.2d 812, 824, quoting Restatement of Trusts §195 (1935).)

Our supreme court has construed this rule to allow a surviving trustee to act alone where, as here, the trust instrument initially names two trustees and authorizes the naming of successor trustees. (*Booth v. Krug* (1938), 368 Ill. 487, 494, 14 N.E.2d 645, 648 (holding that the death of one trustee does not invalidate actions taken by co-trustee prior to the appointment of a successor trustee).) We can conceive of no meritorious reason as to why this rule should not apply to the situation at bar as well.

Illinois law creates a presumption that a trust which initially names two trustees authorizes the surviving co-trustee to act alone. In *Golder v. Bressler* (1883), 105 Ill. 419, the court held that only where the terms of the trust imperatively require that a vacancy of a co-trustee be filled, will a court invalidate the actions of the surviving trustee who acts prior to the appointment of a successor trustee. Illi-

nois' position in this regard is firmly in the mainstream. See, *e.g.,* *Bank of Delaware v. Bancroft* (Del. Ch. 1970), 269 A.2d 254; *Musgrave v. Dierks Lumber & Coal Co.* (Okla. 1966), 421 P.2d 867; 3 W. Fratcher, Scott on Trusts §195, at 172-73 (4th ed. 1988) ("Where there are several trustees and one of them refuses to become or ceases to be a trustee, the powers conferred upon them can ordinarily be exercised by the remaining trustee or trustees"); Annot., *Right of Surviving or Remaining Trustee or Trustees to Act Without Substitution of Another Trustee in Place of One Who has Died or Resigned or Been Removed, Where the Will or Other Instrument Provides for Substitution or Replacement,* 142 A.L.R. 1099 (1943) ("It seems to be well settled that the mere fact that a trust instrument authorizes the appointment of successor trustees to fill vacancies caused by the death, refusal to act, resignation or removal of those originally named *** does not necessarily deprive the surviving trustee *** of the right to act in the execution of the trust without such substitution").

Our review discloses nothing in the 1954 trust instrument or any amendments to it which expressly requires that two trustees must serve. Plaintiff points to language which mandates joint trustee action, but that alone does not rebut the presumption that a surviving trustee can act alone. *Golder* held that the instrument must create an imperative of multiple trustees before a surviving trustee would be deemed powerless to act alone. We find it eminently plausible to construe those sections of the document which require the "joint action of the trustees" to apply only when there are in fact two trustees. That language does not indisputably mandate multiple trustees; thus, the presumption of *Golder* is not rebutted thereby.

Plaintiff also highlights the language in the declaration of successor trustees which states that "[u]ntil otherwise provided, there shall continue to be two TRUSTEES of the TRUST." This language, cast as it is in imperative terms, would rebut the presumption disfavoring mandatory co-trustees if it were a part of the trust or were an amendment thereto. However, as a mere declaration of successor trustees enacted pursuant to the trustees' power under paragraph 5(a) and not pursuant to their power of amendment under paragraph 6(a), this language does not constitute a part of the trust and, therefore, does not rebut *Golder*'s presumption that a surviving trustee can act alone, nor does it render amendments made by only one trustee ineffective. Adolph, acting alone, had the authority under the trust to amend it as he did; as a result, it is immaterial for the purpose of this appeal whether or not William was qualified to serve as a trustee.

### III

Defendants further appeal from the circuit court's denial of their motion for summary judgment. They contend that given the broad amendatory power vested in them by the 1954 trust agreement, they had the authority to enact the instrument entitled Fannie Rubinson Memorial Trusts, Trust A, Declaration of Trust, dated May 21, 1985, thereby divesting plaintiff of her beneficial interest in the 1954 trust. Throughout this action, defendants have attached many different labels to their actions. However, "[i]n equity, the substance of a transaction controls, not its form." (*Metcalf v. Altenritter* (1977), 53 Ill. App. 3d 904, 909, 369 N.E.2d 498, 502.) The substance of the trustees' action here was to amend the trust so as to deprive plaintiff of her beneficial interest. Our task, therefore, is to determine whether, as a matter of law, defendants could exercise their amendatory power to extinguish absolutely the interest of a named beneficiary.

The amendatory power granted to the trustees in the instrument is quite broad. Paragraph 6(a) of the trust is the controlling provision, and it states in pertinent part:

"This declaration of Trust may be amended from time to time *** by the TRUSTEES serving at the time of such amendment, provided the individuals who are serving as such TRUSTEES include one or more of the undersigned or persons designated by them or either of them as additional or successor TRUSTEES. Such amendment may include, with the exceptions set out below, any provision that could have been incorporated in this original Declaration of Trust. *** It is the intent of this Declaration of Trust to give persons who are personally familiar with the character and wishes of Fannie Rubinson, ***, broad freedom to administer the Trust free from liability ***."

Obviously, this language bestowed extensive amendatory power upon the trustees. The exceptions to the authority mentioned in the paragraph either ensure that the trust will never violate the rule against perpetuities or that it will continue to conform with various provisions of the estate and gift tax subtitle of the Federal Internal Revenue Code (26 U.S.C. §§2001 through 2704 (1988)), thereby limiting its tax liability. We can perceive of no exception that can be read into the language quoted above that would limit meaningfully the spacious authority of the trustees to amend the instrument or to add to it "any provision that could have been incorporated in the original Declaration of Trust."

Plaintiff responds that no matter how broad a reserved power to amend may be, a settlor, or a trustee so empowered, can never exercise it in a way which would be inconsistent with the purpose of the trust. While never expressly asserting the point, plaintiff threads throughout her brief the idea that in the absence of an express term to the contrary, the law will imply a restriction on all amendatory power. She intimates that it is this implicit restriction which prevents the trustee or settlor who reserves the power to amend from exercising it in a way that contradicts the trust's purpose. Plaintiff offers no binding or persuasive support for this contention.[3]

Instead, she bases her argument on semantics. She reasons that it is contradictory to argue that a trustee or settlor, given the power only to amend a trust, can use that power to terminate the trust or to replace beneficiaries of the trust or to change the purpose of the trust. In sum, plaintiff argues that in trust law, the power to amend is not the power to destroy.

Although this argument is somewhat consistent with Websters' New Collegiate Dictionary's definition of "amend,"[4] it ignores the long-settled rule and the plethora of cases that have held that where the settlor reserves the unrestricted power to amend a trust, or where the instrument vests such power in the trustees, that power may be used to terminate the trust or, as here, change the beneficiaries of the trust.

Comment *h* to section 331 of the Restatement (Second) of Trusts states:

> "*h. Whether power to modify [the trust] includes power to revoke [the trust].* If the settlor reserves a power to modify the trust, it is a question of interpretation to be determined in view of the language used and all the circumstances whether and to what extent the power is subject to restrictions. *If the power to*

---

[3]Plaintiff cites *Stuart v. Continental Illinois National Bank & Trust Co.* (1977), 68 Ill. 2d 502, 369 N.E.2d 1262, *Harris Trust & Savings Bank v. Wanner* (1946), 393 Ill. 598, 66 N.E.2d 867, and *In re Trusteeship Under the Last Will & Testament of Hartzell* (1963), 43 Ill. App. 2d 118, 192 N.E.2d 697, as support for this proposition. However, not one of these cases addresses the argument that the purpose of a trust serves as an implicit restriction on the express amendatory power of a trustee or settlor. At best, and giving plaintiff every benefit of the doubt, the three cases arguably stand for the proposition that a trustee cannot act inconsistent with the express purposes of the trust. However, these cases do not bind this court as they do not concern a trustee or settlor vested with the broad amendatory power that defendants have under the instant trust instrument.

[4]"3. to change or modify; to alter *esp.* in phraseology; to alter formally by modification, deletion or addition." Webster's New Collegiate Dictionary 100 (1984).

*modify is subject to no restrictions, it includes the power to revoke the trust."* (Emphasis in original and added.) Restatement (Second) of Trusts §331, Comment *h* (1959).

*E.g., Scott v. Dane* (1964), 346 Mass. 782, 196 N.E.2d 195; *Stahler v. Sevinor* (1949), 324 Mass. 18, 84 N.E.2d 447; *Lipic v. Wheeler* (1951), 362 Mo. 499, 242 S.W.2d 43; see also Annot., *Construction and Application of Provision in Trust Instrument Relating to Amendments and Modification*, 128 A.L.R. 1173 (1940); 4 W. Fratcher, Scott on Trusts §331 (4th ed. 1989).

■ It is true that defendants' power to amend is not unrestricted; they cannot, for instance, amend the trust so as to violate the rule against perpetuities. The emphasized portion of the Restatement then, taken literally, does not apply to this situation. However, even the most cramped interpretation of the amendment power in paragraph 6 of the trust would find that the trustees had the authority to divest plaintiff of her beneficial interest and to appoint a new beneficiary.

Paragraph 6(a) gives the trustees the authority to include any provision that could have been included in the original document except for four technical provisions, unrelated to what defendants did here. For instance, a clause allowing the trustee to revoke the trust could have been initially included in the instrument and, thus, since such a clause does not run afoul of the express restrictions on the amending power in paragraph 6, the trustees had the authority to employ that power to make the instant trust revocable. From this we draw the conclusion that if the amendatory clause empowered the trustees to revoke the trust, it also empowered them to take the lesser step of divesting plaintiff of her beneficial interest and naming a new beneficiary in her stead. (See *In re Soloman's Estate* (1938), 332 Pa. 462, 463, 2 A.2d 825, 826 (holding that a reserved power "to modify, alter or amend" the trust "in whole or in part" authorized a changing of the beneficiaries).) As a result, since defendants were acting as authorized by the instrument, they cannot be held to have violated their fiduciary obligation to plaintiff. Therefore, the trial court erred when it found to the contrary.

Not only does paragraph 6(a) support this holding, but we also find other portions of the 1954 trust agreement which support the conclusion that, as a matter of law, defendants had the authority to divest plaintiff of her beneficial interest. Paragraph 6(b)(2), for example, states:

> "No amendment shall be made or shall be valid which shall provide that the beneficiaries of the Trust as amended shall be Morris Rubinson, Walter Rubinson, Adolph Allen Rubinson, or his wife, Helen Pollack Rubinson, nor that any TRUSTEE shall be a beneficiary of the Trust."

This provision, which serves to limit the trustees' power to amend the trust, demonstrates, contrary to the contentions of plaintiff, that the settlor contemplated that the amendment power could be used to change the original beneficiaries. Otherwise, if the power to amend did not include the power to change the beneficiaries, this clause would be meaningless, and it has been recognized that we must, when practicable, avoid constructions of trusts which would render any portion of the document meaningless or void. (*In re Support of Halas*, 104 Ill. 2d at 92-93, 470 N.E.2d at 964.) Consequently, given the trustees' extensive power to amend the trust, they had the authority, as a matter of law, to amend it so as to divest plaintiff of her beneficial interest therein. Thus, the trial court also erred in denying defendants' motion for summary judgment.

## IV

■ With regard to plaintiff's cross-appeal which seeks a return of the attorney fees paid by defendants in defense of this action, since we have held that they acted within their authority and without fault, under Illinois law they clearly had the authority to pay attorney fees out of the trust assets. As the court noted in *First Midwest Bank/Joliet v. Dempsey* (1987), 157 Ill. App. 3d 307, 316, 509 N.E.2d 791, 798, *appeal denied* (1987), 116 Ill. 2d 553, 515 N.E.2d 106: "The general rule is that a trustee found to be without fault is entitled to reimbursement from the trust for all expenses properly incurred in administering and defending the trust." This rule includes payment of attorney fees. (*Webbe v. First National Bank & Trust Co.* (1985), 139 Ill. App. 3d 806, 487 N.E.2d 711; *Brown v. Commercial National Bank* (1968), 94 Ill. App. 2d 273, 237 N.E.2d 567, *aff'd* (1969), 42 Ill. 2d 365, 247 N.E.2d 894.) Therefore, since we have found defendants to be without fault, the sole question of plaintiff's cross-appeal has become moot.

For the foregoing reasons, the judgment of the circuit court is reversed and this action is remanded for entry of summary judgment in favor of defendants.

Reversed and remanded with instructions.

McCORMICK, P.J., and DiVITO, J., concur.