NO. 4-05-0996      Filed 8/9/06

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | |
|---|---|
| JAMES B. PECK, SR., as Trustee of the MARJORIE SIMS Trust Dated August 6, 1987, | ) Appeal from<br>) Circuit Court of<br>) Macon County |
| Plaintiff-Appellant, | ) No. 04L167 |
| v. | ) |
| DAVID E. FROEHLICH, as Trustee of the MARJORIE SIMS Trust Dated September 25, 1991; DAVID E. FROEHLICH, Individually; and FAIRHAVENS CHRISTIAN HOME, | )<br>)<br>)<br>) Honorable<br>) Katherine M. McCarthy, |
| Defendants-Appellees. | ) Judge Presiding. |

_____

JUSTICE COOK delivered the opinion of the court:

This appeal involves two trusts created by the settlor, Marjorie Sims, for the purpose of providing for her health, support, and maintenance during her lifetime. The trustee (and residuary beneficiary) of one of the trusts seeks reimbursement from the trustee (and residuary beneficiary) of the other trust, for one-half of the amounts paid for the settlor's extraordinary caretaking expenses. The circuit court entered summary judgment denying reimbursement. We reverse and remand.

I. BACKGROUND

The settlor, Marjorie Sims, created a revocable living trust, the "Illinois Trust," on August 6, 1987. This trust included essentially all the assets she owned, including her accounts in Arizona banks. Sims spent her winters in Arizona. The Illinois Trust was amended several times in the early 1990s and finally on November 10, 1999. Sims created a second trust,

the "Arizona Trust," on September 25, 1991.  The Arizona Trust was intended to include only Sims' Arizona bank accounts.  The Arizona Trust was irrevocable (although it could be amended by a successor trustee to carry out its purposes) and was intended to protect Sims' Arizona bank accounts from her creditors.

The two trusts expressed a similar purpose, to provide for Sims' health, support, and maintenance for her lifetime.  After her death, most of the residue of the Illinois Trust was to be paid over to the plaintiff, James B. Peck, Sr., and most of the residue of the Arizona Trust was to be paid over to defendant, David E. Froehlich.  Thirty percent of the residue of the Arizona Trust was to be paid over to defendant Fairhavens Christian Home.  Plaintiff and defendant Froehlich had been employed by Sims' husband in his lumber business and were to him the sons he never had.  They were closer to Sims than any of her relatives.

Section 2 of the Arizona Trust states Sims' "primary desire that all of my needs shall be met, even if the trust estate is thereby entirely depleted."  The trustee was directed to provide for those needs as follows:

> "Trustee shall first distribute to me, or
> for my benefit, for my lifetime, so much
> of the net income and principal of the
> trust as trustee believes necessary to pro-
> vide for my health, support[,] and maintenance.
> In making such payments to me or for my

benefit, trustee shall at all times exercise discretion in favor of making such payments." A similar provision is found in the Illinois Trust. There is no question that the funds for which reimbursement is sought were "necessary to provide for [the settlor's] health, support[,] and maintenance." It is also clear that expenses for health, support, and maintenance were to be divided between the two trusts. It would be illogical for the same expenses to be paid twice, or not at all. When two funds are established for payment of the same expenses, the payments must be coordinated between the two funds.

Sims restated her intent to coordinate the two trusts in her November 10, 1999, amendment to her Illinois Trust: "It is further my intent that at such time as I shall incur expenses for my care beyond the ordinary expenses of living in my home *** that such expenses shall be shared equally between this trust and the [Arizona Trust]." The 1999 amendment also clarified that the Arizona Trust included only the Arizona Bank accounts listed on a schedule attached to that trust, even though those accounts were arguably a part of the Illinois Trust. Other assets were said to be a part of the Illinois Trust even though they arguably were included in the Arizona Trust. Sims noted that "each trust may attempt to state a comprehensive plan for all of my assets," but of course that was not possible.

In the 1999 amendment, Sims noted her close relationship with plaintiff and defendant and stated: "I do not want the

˘ 3 ˘

gifts to either of them to be impaired by the entire burden of my care and maintenance or of taxes imposed upon my estate, but I want the burden of my care to be shared equally and the estate taxes to be shared proportionately."  Sims had a stroke in November 2000 and required 24-hour care from that date.  Plaintiff and defendant became successor trustees of their respective trusts in the spring of 2001.  Plaintiff sent quarterly bills to defendant for one-half of Sims' extraordinary caretaking expenses, but all requests for payment were refused.  On February 8, 2001, defendant sent Sims a letter, advising that as long as she had sufficient monthly income, she should not deplete the assets in the Arizona Trust:  "This will avoid unnecessary tax consequences, allow for future growth of the trust and protect your future financial security in the event of unforeseen circumstances."  Denying reimbursement would also increase defendant's residuary share.

Sims died June 10, 2004.  Plaintiff filed this action on October 28, 2004.  On November 4, 2005, the circuit court entered summary judgment in favor of defendant, concluding that defendant had complete and total discretion as trustee in making or not making disbursements from the trust.  "Under the terms of the Arizona Trust, it is not relevant whether the [d]efendant [t]rustee properly exercised his discretion in making or not making disbursements from that Trust."  The court held that Sims' intent is clear from the language of the Arizona Trust and consequently extrinsic evidence is not proper, and the 1999

amendment to the Illinois Trust cannot be considered for purposes of determining Sims' intent.  The court held that the Arizona Trust is an irrevocable trust and Sims retained no right to alter or modify that trust.  Plaintiff appeals.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is proper if, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 2004).  We review the circuit court's grant of summary judgment de novo.  Illinois State Chamber of Commerce v. Filan, 216 Ill. 2d 653, 661, 837 N.E.2d 922, 928 (2005).  We also review a trial court's construction of a trust instrument de novo.  Brown v. Ryan, 338 Ill. App. 3d 864, 871, 788 N.E.2d 1183, 1189 (2003).  The construction of an unambiguous contract, or the determination of whether a contract is ambiguous, is purely a question of law.  In re Estate of Steward, 134 Ill. App. 3d 412, 415, 480 N.E.2d 201, 204 (1985).

### B. The Public-Benefits Paragraph

Defendant relies on the language of section 2 of the Arizona Trust, "Payment of Income and Principal to or for Beneficiary."  Section 2 contains two paragraphs.  As discussed above, the first paragraph set out Sims' primary desire that her needs be met and a direction that the trustee exercise discretion in

favor of making the payments necessary for her health, support, and maintenance.  Defendant's argument is based on the second paragraph:

> "Notwithstanding the foregoing, in the event I should require long-term care for physical or mental disabilities, or a combination thereof, Trustee shall, for my lifetime, use the income and principal of this Trust to provide me with those benefits and services, and only those benefits and services that, in Trustee's judgment, are not otherwise available to me from other sources, as or when needed to enable me to lead as normal, comfortable, and fulfilling a life as possible.  It is my specific intent not to displace any source of funds otherwise available to me for my basic support, for which I may from time to time be eligible by reason of my age, disability, or other factors, from federal, state, or local government, or charitable sources, from all of which sources, as appropriate, I direct Trustee to seek such basic support in my behalf, and I further direct Trustee to deny any request made by any agency or governmental entity requesting disbursement of Trust funds,

6

whether from income or principal, to satisfy

my support needs.  Trustee's discretion in

making or not making disbursement of income

or principal from this Trust is final even

if found arbitrary or unreasonable, Trustee's

sole and independent judgment being the

criterion upon which any such disbursements

are made or withheld."  (Emphasis added.)

Defendant quotes this paragraph in his brief but conveniently omits the highlighted language, breaking in mid-sentence when the settlor begins to explain her "specific intent" not to displace governmental or charitable sources of funds.  The highlighted language makes it clear that the powers granted the trustee are not general powers, which are dealt with in another section, but powers which apply only when public sources seek reimbursement.  This paragraph is a common one in trust instruments.  It makes explicit the presumption "that the trustee's discretion should be exercised in a manner that will avoid *** expending trust funds for purposes for which public funds would otherwise be available."  Restatement (Third) of Trusts §50, Comment e(4), at 273-74 (2003); see also Department of Mental Health & Developmental Disabilities v. Phillips, 114 Ill. 2d 85, 94, 500 N.E.2d 29, 33 (1986) (settlor did not intend, and Department was not entitled to, reimbursement).  Sims had the intent in this paragraph not to reimburse public benefits; she did not have the intent to allow one beneficiary to improve his share at the

cost of the other by refusing to pay for her health, support, and maintenance.

According to defendant we need only read the words in the public-benefits paragraph that the "trustee's discretion *** is final." We may ignore the discussion of governmental and charitable sources and the settlor's specific intent not to displace those sources. It is improper to select a few words from a document and read them out of context. When construing a trust, we cannot fix upon each of its provisions in isolation but must instead consider the document as a whole in order to arrive at the true intent of the settlor. Rubinson v. Rubinson, 250 Ill. App. 3d 206, 213, 620 N.E.2d 1271, 1276 (1993); Steward, 134 Ill. App. 3d at 414, 480 N.E.2d at 203. Words derive their meaning from the context in which they are used, and the contract must be viewed as a whole by viewing each part in light of the others. Board of Trade of the City of Chicago v. Dow Jones & Co., 98 Ill. 2d 109, 122, 456 N.E.2d 84, 90 (1983); Citicorp Savings of Illinois v. Rucker, 295 Ill. App. 3d 801, 810, 692 N.E.2d 1319, 1326 (1998) (language allowing mortgagee to perform certain acts on behalf of mortgagor did not impose fiduciary duties of an agent on mortgagee).

The paragraph in section 2 is a specific provision, giving the trustee broad powers, but only in connection with reimbursement for public benefits. The First District has addressed a public-benefits provision, although in a situation different from ours. Stein v. Scott, 252 Ill. App. 3d 611, 625

N.E.2d 713 (1993).  In Stein, the settlor was not concerned with her own needs, but those of a disabled daughter who was receiving or likely to receive benefits from governmental or private agencies.  The daughter was incapable of bearing children.  The trust instrument provided, "[i]t is my express purpose that any distributions to or for *** [the daughter's benefit] *** from her share be used only to supplement other such benefits."  (Emphasis added.)  Stein, 252 Ill. App. 3d at 613, 625 N.E.2d at 715.  The only provision for the disabled daughter in Stein was the public-benefits provision.  The disabled daughter sought reimbursement for amounts she had allegedly expended for her care, maintenance, and support, but the trustee refused.  The First District agreed with the trustee, contrasting an earlier case where "the trustee was directed, not merely given discretion, to make distributions to the beneficiary as necessary for her support or maintenance."  Stein, 252 Ill. App. 3d at 616, 625 N.E.2d at 717, citing Hart v. Connors, 85 Ill. App. 2d 50, 228 N.E.2d 273 (1967).  In Hart, "there was a finding by the court that the testator was primarily concerned with the comfort of the beneficiary and intended that she have unencumbered use of the trust for that purpose."  Stein, 252 Ill. App. 3d at 616, 625 N.E.2d at 717.

The present case is more like Hart than it is like Stein.  The language of the Arizona Trust states Sims' "primary desire that all of [her] needs shall be met, even if the trust estate is thereby entirely depleted."  The trustee was specifi-cally directed to exercise his discretion in favor of making such

payments.  As in Hart, "[i]t is apparent that the [settlor] was concerned primarily with [her own] comfort and any residue to others was secondary."  Hart, 85 Ill. App. 2d at 54, 228 N.E.2d at 275.  There was a concern in Stein that disbursement of trust funds might impair Scott's eligibility for public benefits.  Stein, 252 Ill. App. 3d at 616, 625 N.E.2d at 717.  There is no such concern in the present case.  The trustee's decision in Stein, not to make discretionary payments to a secondary beneficiary, is not support for the trustee's decision in this case not to make payments he was directed to make for the benefit of the primary beneficiary, the settlor.

Defendant attempts to fit himself with the public-benefits paragraph, arguing that the Illinois Trust was a "source of funds" and his discretion is "final even if found arbitrary or unreasonable."  As defendant points out, the paragraph states "It is my specific intent not to displace any source of funds other-wise available to me for my basic support."  (Emphasis added.)  The sentence continues, however, "for which I may from time to time be eligible by reason of my age, disability, or other factors, from federal, state, or local government, or charitable sources."  The Illinois Trust was not a governmental or charita-ble source.  Defendant's discretion to deny reimbursement to the Illinois Trust was accordingly not "final even if found arbitrary or unreasonable."  The first sentence of the paragraph does not mention public benefits, but that sentence is clearly modified by the following sentence, which begins "It is my specific intent."

## C. Unlimited Discretion

Even if the public-benefits paragraph applied to payments other than those for which public benefits were available, we disagree with the trial court's conclusion that it is irrelevant whether defendant properly exercised his discretion, that "[e]ven if *** his conduct was in bad faith, [the settlor] has even excused such conduct and given him unbridled authority."

In construing a trust, a trial court's first concern is to determine the settlor's intent and give effect to that intent if it is not contrary to public policy. Harris Trust & Savings Bank v. Donovan, 145 Ill. 2d 166, 172, 582 N.E.2d 120, 123 (1991). "[W]hat may constitute an abuse of discretion by the trustee[] depend[s] on the terms of the discretion, including the proper construction of any accompanying standards, and on the settlor's purposes in granting the discretionary power and in creating the trust." (Emphasis added.) Restatement (Third) of Trusts §50(2), at 258 (2003). The purposes of the trust and the powers of the trustee must be read together. When the settlor has a particular purpose in mind, it would be improper for us to ignore that purpose by concluding that the trustee could do whatever he wanted. The settlor's intent in the Arizona Trust was not to let defendant do whatever he wanted.

"It is contrary to sound policy, and a contradiction in terms, to permit the settlor to relieve a 'trustee' of all accountability." Restatement (Third) of Trusts §50, Comment c, at 262 (2003). "Even under the broadest grant of fiduciary

discretion, a trustee must act honestly and in a state of mind contemplated by the settlor.  Thus, the court will not permit the trustee to act in bad faith or for some purpose or motive other than to accomplish the purposes of the discretionary power." Restatement (Third) of Trusts §50, Comment c, at 262 (2003).  A "trustee" who has no responsibility is not a trustee.  See also Amcore Bank, N.A. v. Hahnaman-Albrecht, Inc., 326 Ill. App. 3d 126, 759 N.E.2d 174 (2001) (general terms in a power of attorney that literally purport to grant great authority will normally be interpreted as authorizing the agent to act only in connection with the business the agent is employed to perform).

Of course, it is possible for the settlor not to have a particular purpose in mind and to simply vest discretion to distribute principal or income in the trustee.  That was the case in Rubinson, where the plaintiff alleged the paramount purpose of a trust was to benefit the plaintiff and her brother.  Rubinson, 250 Ill. App. 3d at 213, 620 N.E.2d at 1276.  The plaintiff relied on the following recital:  "'In compliance with the request of FANNIE RUBINSON to use the [corpus of the trust] to express her love for her grandchildren and children *** in any manner considered suitable by [the trustees].'"  Rubinson, 250 Ill. App. 3d at 213, 620 N.E.2d at 1276.  Viewing the document as a whole, the First District could not agree with the circuit court that the main purpose of the trust was to benefit the children and grandchildren of Fannie May Rubinson.  Rubinson, 250 Ill. App. 3d at 213, 620 N.E.2d at 1276.  Paragraph 4 of the

trust expressly gave the trustees "complete and unfettered discretion" with regard to the payment of monies out of the trust. They could pay any amount or, if they chose, they could make no disbursements at all. Rubinson, 250 Ill. App. 3d at 208, 214-15, 620 N.E.2d at 1273, 1276-77. In the present case, in contrast, the settlor did have a primary purpose, that all of her needs be met. In the present case, the discretion of the trustee was not complete and unfettered. Rather, the trustee was ordered at all times to exercise discretion in favor of making such payments.

## D. Alter or Modify

Assuming that the Arizona Trust was an irrevocable trust, it does not appear that Sims attempted to alter or modify that trust by her 1999 amendment to her Illinois Trust. Sims stated in the 1999 amendment that she desired "to explain and clarify the purpose and [her] intent with respect to the declaration of trust [she] signed on September 25, 1991, [the Arizona Trust]" (emphasis added), and it seems logical that she was in fact doing so, not making a change. As discussed above, expenses for health, support, and maintenance were to be divided between the two trusts. Absent of any further direction, it seems logical that the expenses were to be divided equally. When Sims expressly stated, in the 1999 amendment, that the expenses were to be divided equally, she was not altering or modifying the Arizona Trust but making clear what the language of the Arizona Trust already seemed to require. Defendant asks for an inverse

application of the 1999 amendment.  We should not accept what Sims declared to be her intent but do the opposite--because Sims felt it necessary to explain what her intent was in the Arizona Trust, she must have been changing the Arizona Trust.

### E. Extrinsic Evidence

We also disagree with the circuit court's conclusion that the settlor's clear language in the 1999 amendment to the Illinois Trust must be ignored because it is extrinsic to the Arizona Trust.  Extrinsic evidence may be admitted to aid interpretation of a trust instrument only if the document is ambiguous and the settlor's intent cannot be obtained.  Stein, 252 Ill. App. 3d at 615, 625 N.E.2d at 716.  Ambiguity can be found if the language is reasonably or fairly susceptible to more than one interpretation.  Stein, 252 Ill. App. 3d at 615, 625 N.E.2d at 716.  Certainly if the language of a document is clear, it is not the function of a court to modify the document or create new terms.  Steward, 134 Ill. App. 3d at 414, 480 N.E.2d at 203. Even if the document is not particularly ambiguous, however, we should still examine it carefully and try to understand it considering the entire document and the various meanings which words may have.  We should not seize upon one word or phrase in isolation and use that word as an excuse not to consider the entire document.

The "four-corners" rule may make sense in a contract situation where the parties intend their written contract to be the complete and exclusive statement of their agreement.  Some-

times a trust instrument may stand alone as the complete and exclusive statement of a settlor's intent, but that was not the situation here.  The settlor executed two trust agreements dealing with the same subject:  her health, support, and maintenance.  The trusts also covered some of the same assets.  It was impossible to administer one trust without considering what was being done by the other.  "'When there are two or more instruments creating, defining, or relating to a trust, they may, or should, be construed together to effectuate the intention of the creator.'"  Harris Trust, 145 Ill. 2d at 176, 582 N.E.2d at 124, quoting 90 C.J.S. Trusts §164, at 32 (1955).  The two trust instruments here should be construed together.

Even if we accept defendant's argument that the 1999 amendment was not a clarification or restatement of Sims' original intent in the Arizona Trust, but an attempt to change an irrevocable trust, the Arizona Trust had to take note of what happened in the Illinois Trust.  If Sims had dissolved the Illinois Trust, the Arizona Trust would have been responsible for all Sims' health, support, and maintenance payments.  Sims did not dissolve the Illinois Trust, but she did direct it not to pay more than 50% of her expenses.  Actions taken by Sims regarding the Illinois Trust had consequences that affected the Arizona Trust.  Other actions taken by Sims after the creation of the Arizona Trust also had consequences.  Sims would decide whether to live at home or in an expensive extended-care facility.  Sims would decide whether to seek expensive experimental medical care.

Although Sims made the Arizona Trust irrevocable ("but hereby provide for its possible amendment"), subsequent actions by Sims could reduce the amount received by defendant under the Arizona Trust.

## III. CONCLUSION

For the reasons stated, we reverse the circuit court's entry of summary judgment and remand for further proceedings consistent with this opinion.

Reversed and remanded.

McCULLOUGH, J., concurs.

STEIGMANN, J., dissents.

JUSTICE STEIGMANN, dissenting:

Sims made her wishes clear when she created the Arizona Trust in 1991:  the trustee's discretion in making or not making disbursements from that trust was essentially unlimited.  The majority has decided that either Sims could not have so intended or, if she did, she was wrong to do so.  After so concluding, the majority has arrogated to itself to decide what Sims really meant, thereby disregarding what Sims wrote and reaching a conclusion that the majority finds more agreeable.  I respect-fully dissent.

## I. THE IRREVOCABLE TRUST

The Arizona Trust at issue was created in September 1991 and entitled "Irrevocable Declaration of Trust."  During the entire course of this litigation, including questioning of plaintiff at oral argument, plaintiff's position has been to concede that the Arizona Trust was irrevocable.  Thus, this case presented the court with the question of the powers of the trustee of the Arizona Trust as set forth in the 1991 document creating the Arizona Trust.

Despite this procedural posture, the majority writes the following:  "Assuming that the Arizona Trust was an irrevoca-ble trust, it does not appear that Sims attempted to alter or modify that trust by her 1999 amendment to her Illinois Trust."  Slip op. at 13.  This phraseology betrays the majority's unwill-ingness to concede what plaintiff has already conceded--the Arizona Trust was irrevocable.  But, the majority states, assum-

ing the Arizona Trust was irrevocable, the 1999 amendment to the Illinois Trust did not constitute a change in the Arizona Trust (presumably because an irrevocable trust, by definition, cannot be so modified), but, instead, merely constituted an effort by Sims to make "clear what the language of the Arizona Trust already seemed to require."  Slip op. at 13.  Thus, the majority creates in Illinois the doctrine of "Irrevocable Trust (Sort Of)," which means that even if a trust is irrevocable, it may be subject to "clarification" eight years after the fact to "explain" what its terms meant.

The majority is not clear regarding the scope of this new doctrine.  That is, can such "clarification" occur only in subsequent trust documents, or would some other legal document (like a will) suffice?  In addition, what would be the effect of a letter the settlor writes to the trustee eight years after the creation of the trust, indicating her "clarification" of the terms of the trust?

## II. THE TRUSTEE'S DISCRETION

In my judgment, the key to this case is the extraordinary language Sims used in empowering the trustee of the Arizona Trust--language that literally could hardly be stronger in expressing her intent.  The Arizona Trust provides that the trustee's "discretion in making or not making disbursements of income or principal from this trust is final."  That would be a strong statement by itself, but just in case someone might have missed its significance, the trust goes on to provide that the

trustee's discretion is final "even if found arbitrary."  Again, an extraordinary statement.  But just in case someone still missed its import, the trust instrument goes even further, stating that the trustee's discretion is "final even if found unreasonable."  Then, just in case any lingering doubt could somehow exist as to the scope of the trustee's discretion, this sentence concludes as follows: "trustee's sole and independent judgment being the criterion upon which any disbursements are made or withheld."  An interesting exercise for the majority would be to ask: Assuming Sims in fact wished to grant the trustee essentially unlimited discretion, what additional language could she have employed to make her wishes clear?

III. THE AMBIGUITY AS TO THE PURPOSE OF THE TRUST

The majority is correct that the creation of multiple trusts in this case creates some ambiguity regarding both their purpose and their relationship to each other.  However, no ambiguity exists regarding Sims' wish as to who was empowered to resolve all such questions regarding any disbursements from the Arizona Trust:  the trustee of the Arizona Trust possessed essentially unlimited discretion--that is, the trustee was to make disbursements from that trust in his sole discretion, even if someone else might find his exercise of that discretion arbitrary or unreasonable.

Last, I note that this case does not involve any reimbursement of, or claim made by, any governmental agency.  Here, plenty of money was available in both trusts at all times

to address all of Sims' then-current and future needs.  In fact, even after the trustee of the Arizona Trust refused to pay anything regarding Sims' expenses before she died, the Illinois Trust (which paid all of those expenses) still contained over $60,000.