# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Church of the Little Flower v. US Bank*, 2012 IL App (4th) 120266

---

| | |
|---|---|
| Appellate Court Caption | CHURCH OF THE LITTLE FLOWER, Plaintiff-Appellee, v. US BANK, as Trustee of the Erma L. Donelan Trust, Defendant-Appellant, and ST. JOSEPH'S HOME; HOSPITAL SISTERS OF ST. FRANCIS FOUNDATION, INC.; and THE OFFICE OF THE ILLINOIS ATTORNEY GENERAL, as an Interested Party, Defendants. |
| District & No. | Fourth District<br>Docket No. 4-12-0266 |
| Argued | October 17, 2012 |
| Filed | November 5, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A judgment requiring the dissolution of a charitable trust based on the application of the doctrine of equitable deviation was reversed, notwithstanding plaintiff's contention that the trustee's fees and costs frustrated the trust's purpose, since termination was not warranted where other means of dealing with the trustee's fees were available. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 10-CH-768; the Hon. John Schmidt, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |

| Counsel on Appeal | Robert A. Stuart, Jr. (argued), of Brown, Hay & Stephens, LLP, of Springfield, for appellant. |
| | |
| | Jason T.H. Germeraad (argued), of Scott & Scott, P.C., of Springfield, for appellee. |
| | |
| Panel | JUSTICE COOK delivered the judgment of the court, with opinion. Presiding Justice Turner and Justice Knecht concurred in the judgment and opinion. |

**OPINION**

¶ 1      In June 2010, plaintiff, Church of the Little Flower, petitioned the trial court for reformation of a trust of which plaintiff is one of three remaining beneficiaries. Plaintiff asked the court to apply the doctrine of equitable deviation to terminate the trust and distribute its assets to the beneficiaries. One of the named defendants, US Bank, is currently the trustee of that trust. In December 2011, the court granted summary judgment in favor of plaintiff. The court's judgment required US Bank to dissolve the trust and distribute its assets to plaintiff and the other two remaining beneficiaries.

¶ 2      US Bank appeals, arguing equitable deviation did not apply and reformation of the trust was thus improper. We agree. Accordingly, we reverse and remand with directions to enter summary judgment for US Bank.

¶ 3                          I. BACKGROUND

¶ 4      In July 1991, Erma L. Donelan established the trust at issue, designating the First National Bank of Springfield as trustee. (US Bank succeeded as trustee when it merged with or acquired First National Bank of Springfield.) The trust provided for Donelan to receive quarterly payments of the trust's income for the duration of her life and other emergency funds as needed. Any trust assets exceeding $750,000 at the time of Donelan's death were to be distributed free from trust to three charities, in the following shares: 20% to plaintiff; 20% to St. Joseph's Home; and 60% to Friends of the Hospital Sisters of St. Francis, now known as Hospital Sisters of St. Francis Foundation, Inc. Property worth $750,000 was to be retained in trust following Donelan's death. Thereafter, income or, if income were insufficient, income and principal worth 7% of the trust's value at the beginning of each tax year was to be paid in equal quarterly shares to Donelan's four sisters-in-law for their lifetimes. In 2005, the last of her sisters-in-law died. If at that time the value of the trust's assets was below $500,000, the trust agreement would have required the trustee to dissolve the trust and distribute the remaining principal to the three charities–again, 20% each to plaintiff and St. Joseph's Home and 60% to Hospital Sisters of St. Francis Foundation.

¶ 5     Since the trust held more than $500,000 when the last sister-in-law died, the trust agreement provided for the continued quarterly payment of trust income to the remaining charitable beneficiaries in the same 20/20/60 shares. However, in order to lessen the trust's tax liability, the trust was amended pursuant to the so-called "private foundation rules" (see I.R.C. §§ 4940 to 4948 (2006)) to provide for yearly distribution of, instead of its annual income, 5% of the trust's assets. The trust agreement expressly required the trustee to maintain compliance with the private foundation rules and authorized the trustee to amend the trust as necessary. As amended, the trustee's fees and administrative expenses were to be taken out of the 5% distribution before the balance was paid to the beneficiaries.

¶ 6     Each year from 2006 through 2010, the trustee's fees and fund-management fees collected by US Bank exceeded plaintiff's share of the distributions to the beneficiaries. Trustee's fees were based on a percentage of the trust's value. The percentage of assets collected as trustee's fees varied between different investments. For example, US Bank collected trustee's fees at a lower percentage of the value of assets invested in, among other things, US Bank's proprietary mutual funds. (US Bank received 0.9% of the value of assets invested in those funds, compared with, in general, 1.5% of the value of funds invested outside of US Bank.) In total, plaintiff and St. Joseph's Home each received $27,600.32 from the fund from 2006 through 2010; Hospital Sisters of St. Francis Foundation received $82,800.96; and US Bank collected $41,214.06 in fees from the trust. In comparison, the trust income totaled $135,773.98 for those years. These figures are illustrated in the following table:

Yearly Trust Distributions & Income, 2006-2010

| Year | Plaintiff | St. Joseph's Home | Hospital Sisters | US Bank | Trust Income |
|------|-----------|-------------------|------------------|---------|--------------|
| 2006 | $4,049.32 | $4,049.32 | $12,147.96 | $8,074.76 | $25,074.18 |
| 2007 | $6,197.81 | $6,197.81 | $18,593.42 | $8,621.38 | $28,512.11 |
| 2008 | $6,454.60 | $6,454.60 | $19,363.81 | $8,414.09 | $29,767.15 |
| 2009 | $5,698.60 | $5,698.60 | $17,095.82 | $7,840.45 | $26,128.21 |
| 2010 | $5,199.99 | $5,199.99 | $15,599.95 | $8,263.38 | $26,292.33 |
| Total | $27,600.32 | $27,600.32 | $82,800.96 | $41,214.06 | $135,773.98 |

Over the same period, US Bank withdrew additional funds from the trust account to cover administrative expenses. According to plaintiff, US Bank received additional compensation for the trust's investments in US Bank's proprietary mutual funds and other mutual funds affiliated with US Bank, but this compensation was not taken from the trust.

¶ 7      The year-to-year variation in the value of distributions to the charitable beneficiaries corresponded to fluctuations in the trust's overall value. On January 1, 2006, the trust was worth $670,587.54; on January 1, 2007, $693,443.07; on January 1, 2008, $690,623.42; on January 1, 2009, $570,048.86; on January 1, 2010, $604,293.26; and on January 1, 2011, $637,186.38. While the trust incurred substantial losses coinciding with the recession, the trust assets never fell below the $500,000 threshold value that would have triggered termination at the time of the death of Donelan's last living sister-in-law under the terms of the trust agreement.

¶ 8      In June 2010, plaintiff filed its petition for reformation of the trust. Plaintiff alleged, in relevant part, that the trustee's fees and costs, which outpaced the distributions to two of the three beneficiaries, substantially frustrated the trust's purpose of providing the beneficiaries with useful revenues, such that the doctrine of equitable deviation or, alternatively, *cy pres* allowed the trial court to terminate the trust. US Bank, St. Joseph's Home, Hospital Sisters of St. Francis Foundation, and the Illinois Attorney General, as an interested party, were named as defendants. St. Joseph's Home and Hospital Sisters of St. Francis Foundation consented to the proposed termination of the trust.

¶ 9      In February 2011, US Bank filed its motion for summary judgment. In August 2011, plaintiff filed its own motion for summary judgment, in which it relied exclusively on its equitable-deviation theory, abandoning its *cy pres* argument.

¶ 10     In September 2011, although the Attorney General had not entered her appearance in this case, an assistant Attorney General addressed a letter to the parties expressing that office's support for termination of the trust. According to the letter, the Attorney General believed that termination "would save charitable assets and be in the best interests of the public as ultimate beneficiaries of the activities of the charities involved."

¶ 11     In December 2011, the trial court granted plaintiff's motion for summary judgment. It found that the substantial fees that US Bank collected interfered with the trust's charitable purpose. "The purpose of the Trust," the court concluded, "is not to have the proceeds disproportionately eaten by bank fees, but rather to allocate funds for the benefit of the beneficiaries. Given the settlor's intent of establishing a threshold level to cause the Trust to terminate, it is inconceivable that the settlor would have unreasonably intended for the trustee to collect more in administration fees than two of the beneficiaries receive in actual income."

¶ 12     In March 2012, the trial court denied US Bank's motion to reconsider. This appeal followed.

¶ 13                                    II. ANALYSIS

¶ 14     On appeal, US Bank argues equitable deviation did not apply and the trial court erred in reforming and dissolving the trust. Plaintiff maintains the trust benefits US Bank more than

the beneficiaries, "which by all measures must be considered a substantial impairment of the purpose of the Trust. The settlor certainly did not intend to leave her legacy to US Bank." We agree with US Bank that termination is inappropriate in this case.

¶ 15 Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Peck v. Froehlich*, 367 Ill. App. 3d 225, 227, 853 N.E.2d 927, 930-31 (2006). On appeal from the entry of summary judgment, we review the trial court's judgment *de novo. Id.* at 227-28, 853 N.E.2d at 931. Moreover, we review the trial court's construction of a trust instrument *de novo. Id.* at 228, 853 N.E.2d at 931.

¶ 16 The court's object in interpreting and applying a trust instrument is to give effect to the settlor's intent. *Citizens National Bank of Paris v. Kids Hope United, Inc.*, 235 Ill. 2d 565, 574, 922 N.E.2d 1093, 1097 (2009). If the trust instrument's language clearly expresses that intent, then we will adhere to that language unless contrary to law or public policy. *Id.* Charitable trusts, in particular, "are viewed with peculiar favor by the courts, and every presumption consistent with the language contained in the instruments of gift will be employed in order to sustain them." (Internal quotation marks omitted.) *Id.*

¶ 17 Under the doctrine of equitable deviation, "[t]he court may modify an administrative or distributive provision of a trust, or direct or permit the trustee to deviate from an administrative or distributive provision, if because of circumstances not anticipated by the settlor the modification or deviation will further the purposes of the trust." Restatement (Third) of Trusts § 66 (2003); see also *Burr v. Brooks*, 83 Ill. 2d 488, 496, 416 N.E.2d 231, 234 (1981) (" 'The court will direct or permit the trustee of a charitable trust to deviate from a term of the trust if it appears to the court that compliance is impossible or illegal, or that owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purpose of the trust.' " (quoting Restatement (Second) of Trusts § 381 (1959))). Rather than allowing the court to disregard the settlor's intent, equitable deviation enables the court "to give effect to what the settlor's intent probably would have been had the circumstances in question been anticipated." Restatement (Third) of Trusts § 66 cmt. a, at 493 (2003). The court's powers under equitable deviation extend to termination of the trust if under the circumstances the purposes of the trust would be best served by termination. Restatement (Third) of Trusts § 66 cmt. b, at 493 (2003). "In the event of termination under [equitable deviation], the trust property is to be distributed in accordance with the trust purposes and the settlor's probable intention." Restatement (Third) of Trusts § 66 cmt. b, at 493 (2003).

¶ 18 The alleged unforeseen circumstances plaintiff identifies in this case are the collection of fees by US Bank in excess of the distributions to the 20% beneficiaries. According to plaintiff, this results from the operation of the special federal tax laws related to private foundations. The trust agreement (paragraph (d) of the seventh article) expressly required the trustee's compliance with the private foundation rules. Moreover, the parties agree that, regardless of that mandate, Illinois law permitted US Bank to amend the terms of the trust agreement "to the extent necessary to bring the trust into conformity with the requirements for" tax exemption under the private foundation rules. See 760 ILCS 60/1(2) (West 2010).

In turn, to qualify for exemption under the private foundation rules, a trust must make minimum annual distributions equal to at least 5% of the "aggregate fair market value of all assets of the foundation." I.R.C. § 4942(e)(1)(A) (2006). A qualifying distribution is "any amount (*including that portion of reasonable and necessary administrative expenses*) paid to accomplish" the private foundation's, in this case, charitable purpose. (Emphasis added.) I.R.C. § 4942(g)(1)(A) (2006).

¶ 19 Here, US Bank brought the trust at issue into conformity with the private foundation rules by annually distributing–instead of the trust's income, as the trust agreement originally called for–5% of the trust's assets. Trustee's fees and administrative expenses were included in the 5% distribution. The distribution to beneficiaries, which was further divided between them, thus amounted to 5% of the trust's value, less the trustee's fees and administrative costs. To illustrate, if US Bank collected only its minimum trustee's fee of 0.9% of the trust's value (in other words, if all of the trust's assets were invested in US Bank's proprietary mutual funds and no further expenses were withdrawn), then 4.1% of the trust's value would remain to be divided among the three beneficiaries–0.82% each to plaintiff and St. Joseph's Home and 2.46% to Hospital Sisters of St. Francis Foundation. *As currently formulated, therefore, the fees paid to US Bank will always necessarily exceed plaintiff's distribution.* This fact is reflected in the accounting of annual distributions–in all, from 2006 through 2010, US Bank received about 1.5 times as much from the trust as plaintiff did.

¶ 20 Plaintiff contends equitable deviation is justified because Donelan could not have foreseen the amendment of the trust to comply with the private foundation rules. The trust agreement, which directs the trustee to maintain compliance with those rules, plainly refutes that premise.

¶ 21 Moreover, even if the trust's amendment were unforeseen, the private foundation rules cannot be blamed for the amount of the distributions that plaintiff complains are too small to justify continuation of the trust. Under the private foundation rules, the total distributions to the charities from 2006 through 2010 actually *exceeded* the trust's income. That is, if not for the operation of those rules, plaintiff would have received even less money.

¶ 22 The size of the distributions naturally results from the payment of the trustee's fees and expenses and fluctuations in the trust's value. Trustee's fees and costs are inherent in Donelan's chosen mode of property transfer–periodic distribution of the income of trust funds to the beneficiaries. So are fluctuations in the market value of those funds and the income they generate. Notably, plaintiff has not argued that US Bank's fees are unreasonable or that it has violated any fiduciary duty related to self-dealing or responsible investment (although it has intimated that the trustee's fees are underserved). For us to conclude that this particular result–US Bank's fees exceeding payments to plaintiff and St. Joseph's Home–was unanticipated or unintended, we would have to overlook the fact that it was brought about by the operation of the trust pursuant to Donelan's express instructions.

¶ 23 The parties raise the further issue of whether the trust is so uneconomic that termination is warranted. In general, "[i]f the trust estate is or becomes so small that the interest of the beneficiaries, or the trust purposes, would be better served by terminating the trust, the court may so order and shall then direct distribution in a manner consistent with the probable

intention of the settlor." Restatement (Third) of Trusts § 66 cmt. d, at 497 (2003). Acknowledging that its terms are not met in this case, plaintiff cites section 15.5 of the Charitable Trust Act (760 ILCS 55/15.5 (West 2010)) as persuasive authority that the trust at issue should be terminated due to inefficiency. Under that statute, a trustee may, with the Attorney General's consent, terminate a charitable trust if it determines that its continued administration "has become impractical because of the trust's small size or because of changed circumstances that adversely affect the charitable purpose or purposes of the trust." 760 ILCS 55/15.5(a) (West 2010). A trust qualifies for termination due to its "small size" if "the annual expenses of administration, including the trustee's fees, the investment management and accounting fees and excise taxes would, if charged entirely against income, exceed 25% of the income of the trust." 760 ILCS 55/15.5(b) (West 2010). "Changed circumstances" allowing termination "shall mean a condition in which the charitable purpose or purposes of the trust shall, in the judgment of the trustee, have become illegal, unnecessary, incapable of fulfillment, or inconsistent with the charitable needs of the community." 760 ILCS 55/15.5(b) (West 2010). Clearly, as US Bank contests this action aimed at terminating the trust, the cited provision of the Charitable Trust Act does not apply. Further, as we noted earlier, no changed circumstances are present here.

¶ 24    And while US Bank *does* collect more than 25% of the trust's income in fees–from 2006 to 2010, its $41,214.06 in fees was about 30% of the trust's $135,773.98 in income–nevertheless, the trust is not inherently uneconomic. As of January 1, 2011, the trust was worth more than $630,000 and had averaged 5.7% growth over the two previous years. That size of a trust ought to be productive and self-sustaining. Indeed, Donelan believed the trust would be efficient so long as it retained a value of more than $500,000. In the interest of giving effect to Donelan's intent (reflected in the careful design of the trust agreement, the substantial estate left for the charities, and the inclusion of a spendthrift clause) and her purpose of memorializing her family's continued support of the charitable beneficiaries, we conclude these funds should be kept, at least for now, in trust. There are methods other than termination by which the courts can address the amount of US Bank's trustee's fees if they are deemed troublesome.

¶ 25    Deviation, including termination, "merely because [it] would be more advantageous to the beneficiaries" is inappropriate. Restatement (Second) of Trusts § 167 cmt. b, at 354 (1959). Rather, the trust must be so inefficient that its continuation would necessarily interfere with the trust's purpose. This case does not rise to that level. The trial court erred in concluding that equitable deviation was warranted in this case. Summary judgment should have been entered for US Bank rather than plaintiff.

¶ 26                                    III. CONCLUSION

¶ 27    For the foregoing reasons, we reverse the trial court's judgment. On remand, we direct the court to enter summary judgment for US Bank.

¶ 28    Reversed and remanded with directions.